UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

KATLYN TALLEY,

                                    Plaintiff,

                                    **DECISION AND ORDER**
                                         14-CV-309S

      v.

CHAUTAUQUA HILLS MINISTRY, INC.,

                                    Defendant.

───────────────────────────────

**I.    INTRODUCTION**

      The Hon. William M. Skretny referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 9.)  Pending before the Court is a motion by defendant Chautauqua Hills Ministry, Inc. either to preclude vocational evidence and a vocational expert from plaintiff Katlyn Talley or to require her to complete a defense vocational examination.  (Dkt. No. 28.)  Plaintiff showed up for a defense vocational examination on August 21, 2015, at defendant's expense, and refused to answer questions on the advice of counsel.  Defendant protests that plaintiff voiced no substantive objection in advance and left it unable to furnish expert discovery as required under the Court's most recent scheduling order.  Plaintiff counters that she cooperated fully with the vocational expert and declined to answer only a few questions about medical records, referring to the records

themselves. To the extent that defendant's vocational expert did not prepare a report, plaintiff blames the expert for giving up on the examination.

The Court heard oral argument on September 29, 2015. For the reasons below, the Court grants[1] defendant's motion in part as explained below.

## II. BACKGROUND

This diversity[2] case concerns allegations that a group activity involving a zip line went badly wrong. According to the complaint, defendant runs a summer camp called Chautauqua Hills Camp. Among other features, the camp facilities include a zip line strung between two trees. People using the zip line could grab a basketball attached to a rope hanging from the zip line, and then let gravity carry them from one end of the zip line to the other. On July 21, 2012, plaintiff used this zip line during a group activity that her church had organized at the camp. As plaintiff slid down the zip line, the line slackened in such a way that her motion stopped abruptly, throwing her to the ground. The fall to the ground allegedly fractured both of plaintiff's wrists and caused her other injuries. The complaint contains a single claim for common-law negligence.

---

[1] Discovery-related motions, including motions to preclude, generally are considered non-dispositive. *See, e.g.*, *Fuller v. Summit Treestands, LLC*, No. 07-CV-330, 2009 WL 483188, at *1 n.1 (W.D.N.Y. Feb. 25, 2009) (Arcara, *C.J.*).

[2] The parties do not dispute that plaintiff is a citizen of Indiana and that defendant is a New York corporation.

Up to this point, the case appears to have proceeded without incident. The Court issued a scheduling order on August 27, 2014. (Dkt. No. 15.) The Court amended the scheduling order at defendant's request and with plaintiff's consent. (Dkt. Nos. 23, 24.) The parties have met at least once for mediation sessions and, as late as August 24, 2015, had at least one more session scheduled. (Dkt. No. 25.) When plaintiff requested an extension of the deadline to complete expert discovery, the Court granted the request promptly. (Dkt. Nos. 26, 27.) The Court had no reason to think more deeply about plaintiff's assertion that "[a]s of this filing, counsel for the plaintiff has not received expert reports for medical examinations done at the defendants request by Dr. Luzi and Alan Winship." (Dkt. No. 26 at 1.) Neither did the Court invest too much significance in the assertion that "plaintiff has contacted the office of both Dr. Luzi and Alan Winship to coordinate dates for depositions for them, but has been unable to secure a date before the expiration of the discovery deadline, September 30, 2015." (*Id.*) Plaintiff's counsel[3] further represented, as officers of the Court, that they "ha[ve] advised counsel for the defendant, Jody E. Briandi, of this conflict. Plaintiff has not received a response from the defendant concerning this brief extension." (*Id.* at 2.) Given that the docket appeared fairly tranquil and that the requested

---

[3] Plaintiff has more than one attorney from the same law firm listed in the docket as counsel of record. The Court will refer to all of the attorneys collectively, in the plural, as plaintiff's counsel.

3

extension looked modest, the Court concluded that the parties were working diligently on trial preparation.

Looking back, plaintiff's motion for an extension masked events that were not tranquil and that led to the pending motion. The background for the pending motion began on May 22, 2015, when plaintiff and her mother visited their counsel's vocational expert for a vocational economic assessment. (*See generally* Dkt. No. 28-5.) Plaintiff's expert conducted a "standard vocational interview." (*Id.* at 5.) As part of the interview, "Katlyn reports difficulty performing all aspects of respective jobs and further indicates that she intends to pursue a career helping people and perhaps the elderly." (*Id.* at 6.) Plaintiff told the expert that she "previously attempted college coursework on two occasions. She reported difficulty with note taking, typing reports, and test taking." (*Id.*) The expert consequently built a worklife probability table that listed plaintiff's education level as "Some College, No Degree." (*Id.* at 45.) The report that the expert eventually produced has a section titled "Reported Problems" on its first page, "reported" presumably meaning that at least some of the medical and physical problems listed there came from plaintiff during the interview. (*Id.* at 4.) As will become apparent below, the Court highlights these parts of the report to demonstrate that, at least once, plaintiff went through a full vocational interview without restrictions on subject matter, without refusing to answer questions, and without relying on the advice of counsel.

Next came defendant's turn to conduct a vocational examination. The examination almost did not happen, or at least almost required Court intervention, because plaintiff's counsel insisted that having plaintiff travel to Western New York from her hometown in Indiana would pose an economic hardship. (*See* Dkt. No. 28-7 at 3.) With reservations, and for the sake of moving forward, defense counsel agreed to pay to have plaintiff travel to Western New York for the vocational examination. (*Id.* at 6.) While the parties worked out the logistics of the defense vocational examination, plaintiff's counsel did not request limitations on the scope of questioning. Plaintiff's counsel made no objection about the examination other than the cost of travel. Plaintiff's counsel said nothing about requiring defendant to rely on written records instead of questioning. Plaintiff's counsel did not seek a protective order from the Court with respect to any topics or questions that might come up at the examination. The parties scheduled the defense vocational examination for August 21, 2015 with defense expert Alan Winship ("Winship").

Although plaintiff spoke to her own vocational expert without restriction and set no limitations for the defense examination, she took a different approach to Winship than to her own expert. When plaintiff arrived on August 21, 2015, according to Winship,

> Ms. Talley reported that she was instructed by her attorney not to answer questions pertaining to her treatment history and other matters. She refused to answer questions regarding her present

> symptoms, physical ability/limits, activities of daily living, pain, ability to sleep and medications. Ms. Talley would not answer questions relating to who she is treating with, frequency and nature of treatment and physician return to work recommendations. Ms. Talley would not elaborate on her education and training beyond confirming that she graduated from high school. She would not discuss her high school courses or grades. She denied attending college, which is in conflict with the record. She would not elaborate on her preinjury educational/vocational aspirations. She would not respond to questions pertaining to post injury educational/vocational plans. She would not discuss whether she has been referred to or has any plans to engage in vocational rehabilitation services through Indiana. She would not discuss her occupational interests. She would not discuss her employment history, beyond stating she is currently employed part-time by Advanced Auto Parts as a "hub". She would not discuss her essential job functions or how she is doing physical[ly] in this position.

(Dkt. No. 28-9 at 3.) Defense counsel notified plaintiff's counsel immediately that plaintiff was refusing to answer questions and that she would seek to preclude vocational evidence from plaintiff's expert. (Dkt. No. 28-8 at 3.) A surreal, passive-aggressive correspondence ensued. Plaintiff's counsel did not deny directing plaintiff to refuse questions. Plaintiff's counsel also did not deny that Winship asked questions that plaintiff did not answer. Instead, plaintiff's counsel responded with a technical inventory of every fact other than plaintiff's refusal to answer questions. "Our client is there participating in tests. I verified this with a phone conversation with her mother. Your expert has access to her medical records and academic records." (*Id.*) Plaintiff's counsel then skipped ahead to a desire to schedule a deposition of Winship. (*Id.*) Defense counsel also wrote that she considered plaintiff's refusals to be non-compliance with the

arrangement for the vocational examination.  In response, plaintiff's counsel dissembled by writing, "Katlyn is at the doctor's office and is participating in tests that he is propounding to her." (*Id.* at 4.)  Acknowledging obliquely that Winship asked plaintiff questions about her education that she refused to answer, plaintiff's counsel made the non-responsive point that "questions about her academics are better answered by her transcripts that you have.  The questions about her medical history are answered in her medical records . . . . Katlyn is not *refusing* his questions.  She is *referring* him to records that he already has." (*Id.* (emphasis added).)  Ultimately, Winship did not complete his vocational examination.  A few days later, on September 4, 2015, plaintiff's counsel filed the motion for an extension that the Court described above.  In retrospect, the motion reads almost as if plaintiff's counsel had no idea why they had not yet received an expert report from Winship.

     Defendant filed the pending motion on September 15, 2015.  In support of the motion, defendant highlights that plaintiff's counsel made no objection to the defense vocational examination apart from the cost of traveling.  Defendant notes that the events of August 21, 2015 did not happen accidentally; plaintiff's counsel stuck with their course of action even after defense counsel objected.  Defendant also emphasizes the severity of the prejudice that it faces without a defense vocational examination, given that plaintiff's expert has asserted a loss of earning capacity as high as $362,365 in terms of present value.

Plaintiff's counsel filed opposition papers on September 24, 2015. Counsel's first argument takes three pages to discuss information available from plaintiff's deposition, medical records, and other documents. (Dkt. No. 32 at 2–4.) What this has to do with refusing questions on August 21, 2015 is unclear. Counsel then attached plaintiff's medical records to their opposition papers (Dkt. No. 32-2); the Court cannot discern what purpose the attachment served, except to disseminate plaintiff's date of birth in a public docket in violation of Rule 5.2(a).[4] Plaintiff's counsel then refer to an affidavit submitted by plaintiff's mother, who accompanied plaintiff to the defense vocational examination. (Dkt. No. 32-6.) This carefully tailored affidavit avoids addressing whether plaintiff refused to answer questions about treatment history; present symptoms; physical ability/limits; activities of daily living; ability to sleep; current treating physicians and their work recommendations; education and training; high school courses or grades; preinjury educational/vocational aspirations; post-injury educational/vocational plans; vocational rehabilitation services; occupational interests; employment history beyond current employment; and essential job functions. The affidavit states only that plaintiff answered unspecified questions about her "background"; the alleged accident; pain and current medications; and her current employment. By attaching an affidavit from plaintiff's mother, counsel

---

[4] In fairness, defense counsel committed the same violation when she did not redact plaintiff's date of birth from Exhibit D of her motion papers.

bring attention to the absence of an affidavit from plaintiff herself. Counsel then assert that plaintiff answered all questions as best she could; that Winship had access to documents that would have answered all of his questions; and that in any event, the Court cannot impose sanctions because it did not first issue a discovery order that plaintiff would have violated. At oral argument, plaintiff's counsel also tried to defend the absence of an affidavit from plaintiff by contending that it would have been unnecessarily cumulative of her mother's affidavit.

### III. DISCUSSION

"A lawsuit is supposed to be a search for the truth, and the tools employed in that search are the rules of discovery. Our adversary system relies in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003) (internal quotation marks and citations omitted). Rule 37 helps enforce proper conduct. "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FRCP 37(a)(1); *cf. U.S. Bancorp Equip. Fin., Inc. v. Babylon Transit, Inc.*, 270 F.R.D. 136, 140–41

(E.D.N.Y. 2010) (finding that email exchanges and other communications can fulfill the "meet and confer" requirement of Rule 37).  Rule 35 also applies in the specific instance of vocational examinations.  *See Malone v. Med Inn Ctrs. of Am., LLC*, No. 00-CV-0720E(SR), 2004 WL 1080155, at *2 (W.D.N.Y. Apr. 20, 2004) (Elfvin, *J.*) (ordering a vocational examination under Rule 35).  When assessing motions to preclude or to compel for possible abuse of discovery rules, courts ultimately seek to deter "general obstinacy unconnected with the merits of the case."  *Wright v. Jackson*, 522 F.2d 955, 958 (4th Cir. 1975); *cf. Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 180–81 (D.C. Cir. 1980) ("A party is not to be penalized for maintaining an aggressive litigation posture, nor are good faith assertions of colorable claims or defenses to be discouraged.  But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto.").

Here, the circumstances easily weigh in favor of granting defendant some kind of relief.  Plaintiff underwent a full vocational examination with her own expert.  Defendant is seeking only an equal opportunity to evaluate the vocational issues that plaintiff has placed in controversy.  *Cf. Olcott v. LaFiandra*, 793 F. Supp. 487, 492 (D. Vt. 1992) ("Plaintiff has maintained that she cannot effectively enter the work force due to her injuries that are the subject of this lawsuit, and has thus retained her own rehabilitation expert who will testify to that effect and to

plaintiff's future needs. Defendants would be prejudiced if denied the opportunity to have their own expert perform a similar vocational rehabilitation evaluation of plaintiff."). Plaintiff's counsel never sought a protective order and agreed to a defense vocational examination without substantive conditions. Plaintiff's counsel did not advise defense counsel that any topics were off-limits or that defendant would have to use documents to address any issues. Only after defense counsel fronted the money to bring plaintiff to the examination, and only after the examination began, did plaintiff's counsel spring restrictions and refusals to answer on defense counsel and on Winship. When confronted directly and immediately with the surprise restrictions and refusals, plaintiff's counsel skirted the issue by referring to documents, plaintiff's lack of knowledge, and questions that plaintiff did answer. Plaintiff's counsel continued this embarrassing passive aggression even through oral argument, where they insisted that plaintiff answered all but a few questions about medical treatments. Plaintiff's counsel even went as far as to dissemble about the absence of an affidavit from plaintiff, claiming that a sworn affidavit from *a 20-year-old adult woman who is the sole named plaintiff* was cumulative and unnecessary given a carefully structured affidavit from her mother. Plaintiff's counsel may have considered this behavior a clever way to shield their client from expert scrutiny, but the Court will not allow uneven treatment of vocational experts across parties.

The only question that remains is what remedy the Court should fashion in response to plaintiff's counsel's conduct. Plaintiff's counsel have argued that they cannot be sanctioned—yet—because they have not yet violated a court order compelling discovery. They are right. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("The language of Rule 37(b)(2) requires a prior order, but does not by its terms specifically require an order issued pursuant to Rule 37(a). Consequently, a Rule 37(a) order is merely one of the orders that can trigger sanctions under Rule 37(b)(2). Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order.") (citations omitted). Plaintiff's counsel also should receive some sort of notice before facing sanctions under 28 U.S.C. § 1927. *See Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986) ("Courts should be sensitive to the impact of sanctions on attorneys. They can be economically punishing, as well as professionally harmful; due process must be afforded. This does not mean, necessarily, that an evidentiary hearing must be held. At a minimum, however, notice and an opportunity to be heard is required."); *accord Brignoli v. Balch, Hardy & Scheinman, Inc.*, No. 86 CIV. 4103 (RWS), 1989 WL 146767, at *8 (S.D.N.Y. Dec. 1, 1989). Given these principles, the Court will focus on moving the case forward and on giving plaintiff's counsel appropriate notice. Within 14 days of the date of this Decision and Order—or as soon thereafter as Winship is

available, if he cannot be available within 14 days—plaintiff will undergo an unrestricted vocational examination by Winship at Winship's office.  At a minimum, Winship's examination and eventual report will cover the same questions and topics addressed in plaintiff's expert report.  To avoid any more nonsense about what was or was not asked and answered, any interview that Winship conducts as part of the overall examination will be stenographically recorded.  The stenographer will prepare a certified copy of the transcript for both defense counsel and the Court within one week of the examination.  Plaintiff's counsel will not have access to the transcript.  Plaintiff's law firm will bear all expenses necessary to comply with all of the conditions set forth above.  There will be no extensions or exceptions under any circumstances.  Failure to comply with any of the above conditions to the Court's satisfaction will result in sanctions under Rule 37(b)(2) and 28 U.S.C. § 1927.

      The remaining deadlines in the current scheduling order are hereby suspended.  A status conference will occur on **November 3, 2015 at 2:00 PM** to determine what new scheduling will be necessary.  Any attorney participating in the status conference must appear in person.

**IV.    CONCLUSION**

For all of the above reasons, the Court grants defendant's motion (Dkt. No. 28)  in part to compel a defense vocational examination as explained above.  The Court denies defendant's motion, without prejudice, to the extent that it seeks any other relief.

SO ORDERED.

*/s Hugh B. Scott*
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: October 5, 2015